UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WENDY TAKANO,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>NELSON and KENNARD, ROBERT SCOTT KENNARD, DONALD SCOTT NELSON,<br><br>　　　　　　　　　Defendants. | CASE NO. 2:19-cv-01932-BAT<br><br>**ORDER DENYING MOTION FOR DEFAULT (DKT. 20) AND GRANTING MOTION TO DISMISS (DKT. 22)** |

Plaintiff Wendy Takano filed a motion for default. Dkt. 20. On the same day, Defendants Robert Scott Kennard, Donald Scott Nelson, and Nelson & Kennard filed a motion to dismiss Plaintiff's First Amended Complaint. Dkt. 22. The Court denies the motion for default as moot and, for the reasons stated herein, grants Defendants' motion to dismiss.

## PLAINTIFF'S ALLEGATIONS

Ms. Takano alleges violations of the Fair Debt Collection Practices Act ("FDCPA") by Defendants Kennard, Nelson, and Nelson & Kennard, the attorneys who represented FIA Card Services, N.A. ("FIA") in a debt collection lawsuit, filed in Whatcom County District Court on June 21, 2011, in *FIA Card Services, N.A. v. Wendy S. Takano*, Case No. CV11-1381 (the "FIA Lawsuit"). Dkt. 7 (Amended Complaint). The FIA Lawsuit sought to recover $5,269.86 from Ms. Takano on a defaulted credit card obligation owed by Ms. Takano to FIA, a subsidiary of Bank of America, N.A. *Id.* at 5. During the FIA Lawsuit, Ms. Takano was represented by Attorney James Sturdevant. Mr. Sturdevant also represents Ms. Takano in this case.

ORDER DENYING MOTION FOR DEFAULT
(DKT. 20) AND GRANTING MOTION TO
DISMISS (DKT. 22) - 1

Prior to the trial set on January 3, 2018, the parties orally agreed to settle the FIA lawsuit for payment by Ms. Takano in the amount of $400.00. *Id.* at 5. In a letter to Defendants dated January 3, 2018, Mr. Sturdevant stated: "I appeared in court, informed it that we settled the case and will be submitting a stipulation and order of dismissal. I expect to receive the $400 from my client shortly. Please forward the stipulation and order and I will submit it to the court after I have received and remitted the $400 to you from my trust account." Dkt. 7, Ex. 1

In a letter to Defendants dated January 5, 2018, Mr. Sturdevant stated: "I have the $400 from Ms. Takano in my trust account. I will forward a check to you next week. Please send me a copy of the Stipulation and Order of Dismissal." *Id.* at 6, and Ex. 2.

Over nine months later, during which time apparently Mr. Sturdevant and Defendants did not communicate at all, Defendants requested a second trial date. On October 23, 2018, Mr. Sturdevant received an *ex parte* document stating the trial date was on February 6, 2019, and on that same day, Mr. Sturdevant filed a motion to dismiss the FIA Lawsuit. *Id.* In opposition, Defendant Kennard submitted a declaration stating:

> Prior to the date set for trial, the parties, through counsel, verbally agreed to resolve the matter and Plaintiff requested the January 3rd trial date be vacated. Trial of this matter is current set for February 6, 2019. Given Ms. Takano's personal circumstances, the Plaintiff was willing to discount its claim in the sum of $5,269.89 and accept the sum of $400.00 in settlement thereof. To date, no agreement has been executed by the parties nor has the Defendant tendered the $400.00 settlement amount.

Dkt. 7, Ex. 4. On November 30, 2018, the state court judge granted the motion to dismiss based on "[FIA]'s failure to honor the settlement agreement" and dismissed the case with prejudice. Dkt. 7, Ex. 3. The court declined to assess terms against FIA. *Id.*

On November 26, 2019, Mr. Sturdevant filed this action on Ms. Takano's behalf, alleging that Defendants, by failing to complete the parties' oral settlement and obtaining a new trial date,

1  violated various provisions of the FDCPA, including §1692d (harassment, oppression, and

2  abuse); §1692e (false, deceptive or misleading representations); §1692e(5) (threat to take legal

3  action it could not legally take); §1692e(10) (false representations or deceptive means); and §

4  1692(f) (unfair and unconscionable means. Dkt. 1; Dkt. 7 at 7-9. Ms. Takano claims damages "of

5  the necessity of having to incur additional state court attorney's fees and emotional distress."

6  Dkt. 7 at 7, 9.

7        Defendants move for dismissal because Ms. Takano has failed: (1) to allege facts

8  sufficient to confer Article III standing on this court; or, alternatively, (2) to state a claim upon

9  which relief can be granted; and/or (3) to bring her claims within the applicable one-year statute

10 of limitations. Dkt. 22.

11 STANDARD OF REVIEW

12       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject

13 matter jurisdiction of the court. *See* Fed R. Civ. P. 12(b)(1). If a plaintiff lacks Article III

14 standing to bring a suit, the federal court lacks subject matter jurisdiction and the suit must be

15 dismissed under Rule 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004);

16 Fed. R. Civ. P. 12(b)(1). The party invoking federal jurisdiction bears the burden of establishing

17 standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

18       In a Rule 12(b)(6) motion to dismiss, the burden falls on the defendant to prove that the

19 complaint fails to state a claim upon which relief can be granted. All factual uncertainties in the

20 complaint must be construed in the light most favorable to the plaintiff. *In re Syntex Corp. Sec.*

21 *Litig.*, 95 F.3d 922, 926 (9th Cir.1996). The Court will dismiss only those claims for which it

22 appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief.

23 *Wyler Summit Partnership v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998).

1  However, the complaint must provide "more than labels and conclusions, and a formulaic

2  recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

3  544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

4  In a motion to dismiss, courts consider "the complaint in its entirety, as well as other

5  sources courts ordinarily examine ..., in particular, documents incorporated into the complaint by

6  reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues &*

7  *Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). Courts may take

8  judicial notice of adjudicative facts that are "capable of accurate and ready determination by

9  resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b),

10  including "'proceedings in other courts, both within and without the federal judicial system, if

11  those proceedings have a direct relation to the matters at issue.'" *Bennett v. Medtronic, Inc.*, 285

12  F.3d 801, 803 n. 2 (9th Cir.2002) (quoting *United States ex rel. Robinson Rancheria Citizens*

13  *Council v. Borneo*, 971 F.2d 244, 248 (9th Cir.1992)).

14  DISCUSSION

15  A.    Article III Standing

16  The "irreducible constitutional minimum" of standing consists of three elements: plaintiff

17  must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

18  the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan*, 504

19  U.S. at 560–561, 112 S.Ct. 2130; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528

20  U.S. 167, 180-181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). At the pleading stage, the plaintiff

21  must "clearly ... allege facts demonstrating" each element. *Warth v. Seldin*, 422 U.S. 490, 518,

22  95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

23

An injury in fact is the "'[f]irst and foremost' of standing's three elements," which requires a plaintiff to show that he or she suffered "an invasion of a legally protected interest" that is "concreate and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, ⎯⎯ U.S. ⎯⎯, 136 S. Ct. 1540, 1548, 194 L.Ed.2d 635 (2016).

Ms. Takano contends she has sufficiently alleged an injury in fact because breach of a settlement agreement constitutes an actual and particularized injury. In support, she relies on two unpublished cases. In the first case, *Russo v. United Recovery Sys., LP*, 2014 WL 7140498 (E.D.N.Y. Dec. 11, 2014), the parties entered into a written settlement of Russo's debt and after Russo made ten of the eleven agreed payments, defendants refused to accept the eleventh and final payment and insisted instead, that Russo pay the original debt. In these circumstances, the court held that Russo had stated a plausible FDCPA claim because defendants deceptively agreed to a settlement to which they never intended to abide, and Russo was reasonable in believing that by making the eleven payments, he would have settled his debt. *Id.* 4.

In the second case, *Figueroa v. Law Offices of Patenaude & Felix*, 2014 WL 12597118 (C.D. Cal. May 30, 2014), the parties similarly entered into a written settlement, Figueroa paid the settlement amount, and even though they received the settlement check, defendants filed a collection lawsuit. The court held that in these circumstances, Figueroa had stated a plausible FDCPA claim because it was not unreasonable for Figueroa to expect defendants would refrain from further debt collection efforts until he paid the settlement amount. *Id.* at * 4.

These cases are considerably dissimilar to the facts alleged by Ms. Takano. She alleges that after the parties orally agreed to settle a $5,269.86 debt for $400.00 and letters from Mr. Sturdevant outlined the steps to complete the settlement (*i.e*., the exchange of settlement documents, payment of the $400, and filing the completed settlement documents with the court),

none of these steps were taken. Defendants never sent proposed settlement documents and Mr. Sturdevant never tendered the $400.00, although he represented in his January 5, 2018 letter to Defendants, that he would "forward a check [] next week." Dkt. 7, Ex. 1. And apparently no one, including Mr. Sturdevant, bothered to follow up on completing the parties' oral agreement to settle. In fact, as alleged, no action was taken by either side in the case for over ninth months.

From these allegations, the court cannot plausibly infer that Defendants intended to deceive Ms. Takano, as their communications were entirely through Mr. Sturdevant. And Mr. Sturdevant also took no steps to complete the settlement and allowed the $400.00 settlement amount to "languish" in his trust account while he waited for Defendants to prepare a stipulation and order. *Id.* at 6. Additionally, after Defendants sought a second trial date, even though obtained *ex parte*, Mr. Sturdevant successfully moved to dismiss the FIA litigation with prejudice, without payment of the $400 offered in settlement or payment of her original defaulted debt. And, although the motion to dismiss was based on "[FIA]'s failure to honor the settlement agreement," the state court did not assess terms against FIA. Dkt. 7, Ex. 3.

From these allegations, it is plausible to infer that Mr. Sturdevant sought recovery of his fees for filing the motion to dismiss and that this request was denied. But this is not entirely clear from the record. Certainly, a legal motion in the state court action is the most common means to recover attorney's fees and costs from an opposing party in the aftermath of a lawsuit. Whether Mr. Sturdevant failed to make such a motion or did and was denied, the FDCPA cannot be used to collaterally attack or appeal any determination made by the state court. If the claims presented in federal court "'depend[ ] on issues identical to those that [have] ... been resolved in the state-court action,'" plaintiffs are precluded from raising those claims here." *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1032 (9th Cir.2005) (quoting *San Remo*

1  *Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 326–27, 125 S.Ct. 2491, 162
2  L.Ed.2d 315 (2005)).
3        In summary, Ms. Takano alleges that her original defaulted debt remains unpaid and the
4  $400 offered in settlement remains in her attorney's trust account and that the debt collection
5  lawsuit against her has been dismissed with prejudice. Thus, she has not alleged, nor can she,
6  that she suffered actual damages due to Defendants' conduct. This also precludes damages for
7  emotional distress, as the FDCPA expressly requires, to recover above and beyond statutory
8  damages, definable actual damages. *See* 15 U.S.C. § 1692k(a)(1); *Costa v. National Action*
9  *Financial Services*, 634 F.Supp.2d 1069, 1078 (E.D. Cal. Dec. 19, 2007).
10       Accordingly, the amended complaint shall be dismissed for failure to allege standing to
11 confer Article III standing on this court. Alternatively and in addition, it appears beyond doubt
12 that Ms. Takano can prove no set of facts which would entitle her to relief under the FDCPA.
13 B.    <u>Failure to State a Claim</u>
14       The purpose of the FDCPA is to protect vulnerable and unsophisticated debtors from
15 abuse, harassment, and deceptive collection practices. *Guerrero v. RJM Acquisitions LLC,* 499
16 F.3d 226, 938-939 (9th Cir.2007) (citing S. Rep. 95–389, at 2, 4S. Rep. 95–389, at 2, 4 (1977), as
17 reprinted in 1977 U.S.C.C.A.N. 1695, 1696, 1699; *Clark v. Capital Credit & Collection Servs.*,
18 Inc., 460 F.3d 1162, 1171 (9th Cir.2006) ("[T]he FDCPA protects all consumers, the gullible as
19 well as the shrewd ... the ignorant, the unthinking and the credulous.") (quoting *Clomon v.*
20 *Jackson*, 988 F.2d 1314, 1318–19 (2d Cir.1993)).
21       Ms. Takano alleges that Defendants' conduct – failing to follow-through with the
22 proposed settlement and obtaining a second trial date with an *ex parte* motion – constituted (i)
23 harassment, oppression or abuse in violation of § 1692d; (ii) false, deceptive or misleading

representations or means to collect the debt, in violation of § 1692e; (iii) a threat to take an action they could not legally take because they had already settled, in violation of § 1692e(5); (iv) false representations or deceptive means to collect the debt, in violation of §1692e(10); and (v) unfair and unconscionable means to collect or attempt to collect the debt, in violation of § 1692(f). Dkt. 7 at 7-9.

As in *Guerrero,* the issue here is not whether defendants are "debt collectors" under the Act, but whether the actions they took (or failed to take) when Ms. Takano was, at all relevant times represented by an attorney, are actionable under the FDCPA. As explained by the Ninth Circuit in *Guerrero*, the Act's purposes are not served by applying its strictures to communications sent only to a debtor's attorney, *particularly in the context of settlement negotiations*, because Congress was concerned with disruptive, threatening, and dishonest tactics (*i.e.*, "threats of violence, telephone calls at unreasonable hours [and] misrepresentation of a consumer's legal rights.") *Guerrero*, 499 F.3d at 938-939 (emphasis added) (citing S. Rep. 95–389, at 2S. Rep. 95–389, at 2, 1977 U.S.C.C.A.N. at 1696, and *Pettit v. Retrieval Masters Creditors Bureau, Inc*., 211 F.3d 1057, 1059 (7th Cir.2000)("In other words, Congress seems to have contemplated the type of actions that would intimidate unsophisticated individuals and which, in the words of the Seventh Circuit, 'would likely disrupt a debtor's life.'"). When "an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Guerrero*, *supra* at 939 (citing *Kropelnicki*, 290 F.3d at 127–28).

Mr. Sturdevant argues that this case does not involve "communications" but rather, "litigation misconduct." However, the Ninth Circuit in *Guerrero* purposefully used expansive language to hold "that communications directed solely to a debtor's attorney *are not actionable*

ORDER DENYING MOTION FOR DEFAULT
(DKT. 20) AND GRANTING MOTION TO
DISMISS (DKT. 22) - 8

*under the Act,"* and therefore, did not distinguish between violations of different subsections of the FDCPA. *See*, *Rios v. Mandarich Law Group, LLP*, 2019 WL 7800268 at *3 (C.C. Cal. Oct. 24, 2019) (citing *Guerrero*, 499 F.3d at 934 (emphasis added)). *Guerrero* therefore does not distinguish between violations of different subsections of the FDCPA—whether the subsections refer to "communications," "conduct," "representations," or "means." *Id.*

Mr. Sturdevant also argues that Defendants' conduct – "in settling the case, refusing to go forward with the settlement and then seeking, *ex parte*, a second trial date, fooled this attorney" and therefore, the conduct was material conduct under the FDCPA because "the least sophisticated debtor would likely be misled by [such] communication." Dkt. 25 at 6 (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033-34). Under the facts alleged, this argument makes no sense. First, all communications, including the offer to settle, was made to Mr. Sturdevant and not directly to Ms. Takano. Second, there is no factual basis to conclude that Mr. Sturdevant was misled and deceived into believing that the FIA Litigation was at an end because he acknowledged in his communications to Defendants that at least three unfinished items were needed to complete the settlement – Defendants were to prepare the stipulation and order, Mr. Sturdevant was to send them a check for $400, and then, Mr. Sturdevant would submit the stipulation and order of dismissal to the state court. There are no facts alleged that explain why these items were not completed.

Mr. Sturdevant speculates in his opposition brief that "perhaps FIA is the malefactor and that perhaps Defendants exceed their authority when they settled the case and FIA reneged" and that perhaps he should sue FIA under Washington's Consumer Protection Act. Dkt. 25 at 2. Mr. Sturdevant may speculate that the alleged "litigation misconduct" is a violation of state law, but there are no factual allegations in the amended complaint to support such a claim or to show how

ORDER DENYING MOTION FOR DEFAULT
(DKT. 20) AND GRANTING MOTION TO
DISMISS (DKT. 22) - 9

it would also violate the FDCPA. Indeed, violations of other laws are not *per se* violations of the Act. *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) ("We disagree with [the plaintiff] that debt collection practices in violation of state law are *per se* violations of the FDCPA."). As noted in *Rios*, applying *Guerrero*, even an "outrageous" communication between attorneys does not fall under the Act. *Rios*, supra at *3. And, as previously noted, Ms. Takano's remedy for any such "litigation misconduct" was in the FIA Litigation where she obtained the favorable dismissal.

Accordingly, the court **grants** Defendants' motion to dismiss (Dkt. 22) because Ms. Takano has failed to allege an actual concrete injury sufficient to confer Article III jurisdiction on this court and has failed to allege a violation of the FDCPA.[1] Ms. Takano's motion for default (Dkt. 20) is **denied** as moot.

DATED this 19th day of June, 2020.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

---

[1] Because there are sufficient bases for dismissal, the court does not reach Defendants' additional argument that the amended complaint is time-barred.

ORDER DENYING MOTION FOR DEFAULT
(DKT. 20) AND GRANTING MOTION TO
DISMISS (DKT. 22) - 10